**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RONALD F. BRATEK,

Plaintiff,

v.

L&L FINANCIAL HOLDINGS, et al.,

Defendants.

CIVIL ACTION NO. 10-246 (MLC)

**MEMORANDUM OPINION**

**COOPER, District Judge**

Plaintiff, Ronald F. Bratek ("Bratek"), brought this action against defendants, L&L Financial Holdings (d/b/a L&L Energy, Inc.) ("L&L") and Dickson V. Lee, claiming that defendants (1) fraudulently induced Bratek to purchase certain warrants for securities by not disclosing a deadline by which they could be redeemed for shares, and (2) violated the New Jersey Uniform Securities Law, N.J.S.A. § 49:3-52. (Dkt. entry no. 1, Compl.) Bratek also seeks a judgment declaring that the warrants at issue remain valid and enforceable. (Id. at 5.)

Defendants contend that Bratek is bound by an agreement to arbitrate the instant dispute, and now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), 12(b)(3), or 12(b)(6) or, in the alternative, transfer the action to the United States District court for the Central District of California, pursuant to 28 U.S.C. § ("Section")

1406(a). (Dkt. entry no. 7, Mot. to Dismiss.) Bratek opposes the motion. (Dkt. entry no. 9, Pl. Br.) The Court determines the motion on the briefs without an oral hearing, pursuant to Rule 78(b). The Court, for the reasons stated herein, will deny the motion.

**BACKGROUND**

Defendants provided Bratek a confidential placement memorandum in 2003 discussing the nature of L&L's business, the offering of stock, and the fact that a warrant would be provided for each share of stock purchased. (Pl. Br. at 1 & Ex. A, Placement Memorandum at 10 ("Offers to purchase [shares of L&L] will be made directly to prospective purchasers only by means of this Private Placement Memorandum. . . . Purchasers will receive a warrant to purchase one additional share of common stock for each share of common stock purchased in this offering.").) Bratek purchased L&L stock and warrants between May 22, 2003 and September 29, 2004, and he represents that he now owns 165,000 shares and 225,000 warrants. (Compl. at 2, ¶ 7; Bratek Cert., Ex. B, Checks from Bratek to L&L Financial Holdings.)

L&L issued Bratek Warrant No. 5015, for 75,000 shares, and Warrant No. 5015C, for 150,000 shares, on March 21, 2005. (Dkt. entry no. 9, Bratek Cert. Ex. C, Warrants.) The Warrants, which contain identical contractual provisions, entitle Bratek to purchase the specified number of shares of L&L stock at a

specified purchase price per share on or before August 1, 2008. (Id.)[1] The Warrants are signed by defendant Dickson V. Lee, L&L's President and Chief Executive Officer, but not countersigned by Bratek, although there is no signature line for Bratek or for a purchaser of the Warrants generally. (Id.)

An attorney representing Bratek wrote to L&L on July 31, 2008, requesting that the expiration date of the Warrants be extended from August 1, 2008, to August 1, 2010. (Dkt. entry no. 7, Gordon Decl. Ex. C, 7-31-08 Letter.) A "Dear Shareholder" letter from L&L, dated August 25, 2008, advised that "[m]any . . . shareholders have contacted L&L seeking an extension of the recently expired L&L Warrants (Classes A, B, and/or C) after L&L stock started to trade at $2.50/share in 8/2008." (Id., Ex. D, 8-25-08 Letter.) The "Dear Shareholder" letter further advised that the L&L board of directors had approved a resolution to automatically extend the validity of all warrants for a six-month period, ending February 25, 2009, and noted:

> With the extension, you are now eligible to duly convert at any time before 2/25/09 of your warrants in your possession to L&L Common shares with the same terms indicated on your warrant certificates.
>
> Please be aware that this automatic "6-month-extension" of warrants are "one-time" only. The extension will

[1] The Warrants also state at the top of the document, immediately below the "date of issuance," that the warrant is "Void after August 1, 2008." (Id.)

> expire on 2/25/09. Please be aware that all warrants conversion privilege will not be extended further.

(Id. (emphasis in original).)

Bratek apparently never converted the Warrants into shares of common stock. He contends that "[s]hortly after the L&L unilaterally imposed deadline for extending the warrants, as extended, lapsed, L&L went public" and the value of L&L stock increased. (Bratek Cert. at ¶ 16.)

The parties now dispute whether Bratek may properly bring his fraud action in this Court, or whether he is bound by an arbitration clause in the Warrants. The Warrants provide:

> 8. Miscellaneous
>
> (a) Governing Law. This Warrant and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto will be governed by, and construed in accordance with, the internal law of the United States and the State of California, without regard to conflicts of laws.
>
> (b) Arbitration. Any controversy, dispute or claim of any nature whatsoever arising out of, in connection with or in relation to this Warrant, including the issue of arbitrability of any such disputes, will be resolved by final and binding arbitration in accordance with the UNCITRAL Commercial Arbitration Rules by a retired judge at JAMS. JAMS will be the appointing authority, and the hearing will be held in Los Angeles, California. The prevailing party in any dispute will be entitled to recover all attorney's fees, costs and expenses in addition to other allowable costs.

(Warrants at 3.)

Bratek contends that the Warrants were issued unilaterally by L&L after he purchased the shares and warrants, and thus he did not agree to the arbitration clause. (Pl. Br. at 5-6.) Bratek argues that, to the extent his right to litigate his claims is contractually constrained at all, he is subject to the Placement Memorandum and its accompanying Subscription Agreement, as the latter contains a forum selection clause vesting the right of the parties to maintain an action in Nevada. (Id. at 6-7.) The Subscription Agreement is appended to the Placement Memorandum as Exhibit C, and states in relevant part:

> 6. Governing Law. The Subscription Agreement shall be enforced, governed and construed in all respects in accordance with the laws of the State of Nevada. Any legal action, suit or proceeding to be instituted by any party with respect to this Subscription Agreement, the purchase of the Shares or to enforce any judgment obtained hereunder shall be brought by such party exclusively in the courts of the State of Nevada.

(Placement Memorandum, Ex. C, Subscription Agreement.) Bratek argues that Defendants have waived the Nevada forum selection clause of the Subscription Agreement by their failure to mention it in their moving papers. (Pl. Br. at 7 n.2.)[2]

Defendants contend that Bratek is bound by the arbitration clause contained in the Warrants because he did not object to the

[2] Neither party has suggested that the Court apply Nevada law in considering the instant motion. We make no ruling at this juncture whether Nevada is the exclusive forum or whether Nevada law applies to this action.

arbitration provision, and indicated his acquiescence in the Warrants when he asked that the Warrants be extended for two years in the July 31, 2008 Letter. (Dkt. entry no. 10, Def. Reply Br. at 1.) Defendants suggest that Bratek cannot seek to enforce the validity of the Warrants and simultaneously disclaim the arbitration clause contained therein. (Id. at 1-2.)

**DISCUSSION**

**I. The Federal Arbitration Act**

Arbitration is a matter of contract, and arbitrators derive their authority from the parties' agreement to submit their dispute to arbitration. Kaplan v. First Options of Chi., Inc., 19 F.3d 1503, 1512 (3d Cir. 1994) ("[N]o party can be forced to arbitrate unless that party has entered into an agreement to do so."), aff'd, 514 U.S. 938 (1995). Arbitration agreements are enforceable to the same extent as other contracts, and there is a "strong federal policy in favor of the resolution of disputes through arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003).

The "question of arbitrability" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Howsham v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotation omitted) (alteration in original). A court will direct parties to proceed with arbitration if a dispute falls within the scope of the

arbitration agreement. See 9 U.S.C. § 3; Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). Before directing the parties to arbitration, a court must "determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009); see also Sarbak v. Citigroup Global Mkts., Inc., 354 F.Supp.2d 531, 536 (D.N.J. 2004). For purposes of this motion, the Court is concerned with the threshold question of whether a valid agreement to arbitrate exists, as Defendants do not move this Court to compel arbitration.[3] See Molloy v. Am. Gen. Life Co., No. 05-4547, 2006 WL 2056848, at *4 n.3 (D.N.J. July 21, 2006).

**II. Existence of an Agreement to Arbitrate**

Bratek contends that no valid agreement to arbitrate exists because he did not consent to arbitrate any claims. (Pl. Br. at 5.) He argues that the "Placement Memorandum and/or Subscription Agreement are the controlling and primary agreements between the parties," and notes that these documents contain provisions contrary to the arbitration language in the Warrants. (Id. at 6.) Bratek contends that the Warrants were (1) not signed by

[3] Defendants indicate that in the event that the Court grants its motion to transfer the action to the Central District of California pursuant to Section 1406(a), they would file a motion to compel arbitration in that court. (Dkt. entry no. 7, Def. Br. at 1.)

him, and (2) unilaterally prepared and issued to Bratek long after he had purchased his stock in L&L and thereby obtained the right to a warrant for each share purchased. (Id.)

Defendants argue that because Bratek is seeking to enforce the Warrants in this action, including a declaration that would permit him to exercise the Warrants in the future, he is bound by the terms thereof, including the arbitration provision. (Def. Br. at 6.) Defendants implicitly argue that because Bratek's counsel wrote a letter to L&L seeking to extend the time in which to exercise the Warrants, he adopted the terms of the Warrants, regardless of any lack of earlier assent by Bratek. (Id. at 3.)

We find that Bratek accurately identifies the controlling contractual agreement for purposes of this motion. The elements of a contract are offer, acceptance, and consideration. McNutt v. Estate of McNutt, No. 09-2, 2009 WL 3756907, at *4 (D.N.J. Nov. 6, 2009) (citing Cont'l Bank of Pa. v. Barclay Riding Acad., Inc., 459 A.2d 1163, 1171-72 (N.J. 1983)). A contract "arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284 (1992) (internal quotation and citation omitted). L&L offered to Bratek in the Placement Memorandum and Subscription Agreement the opportunity to purchase stock and warrants. (See Placement Memorandum at 10 ("Offers to purchase

the Shares will be made directly to prospective purchasers only by means of this Private Placement Memorandum.").) Bratek accepted this offer by paying L&L consideration for shares of stock on May 22, 2003, and June 12, 2003. (Checks from Bratek to L&L Financial Holdings.) Together, these two $25,000 checks represent the minimum investment set forth in the Placement Memorandum, and pre-date the end of the subscription period. (Placement Memorandum at 10.)[4]

By the terms of the Subscription Agreement, "[e]ach share purchased [would] be accompanie[d] by a warrant to purchase an additional share of common stock at the offering price." (Subscription Agreement at C-1.) The Subscription Agreement states that "the representations, warranties and agreements set forth in this Subscription Agreement shall survive the

---

[4] We note that the Placement Memorandum also states that "[i]n order to subscribe, an investor needs to complete the Confidential Investor Questionnaire and Subscription Agreement." (Placement Memorandum at 10; <u>see also</u> Subscription Agreement at C-1 ("[T]his subscription shall be deemed to be accepted by the Company only when a copy of the Signature Page of this Subscription Agreement is executed by the Company.").) No completed Subscription Agreement is yet a part of the record in this case. (<u>See</u> Subscription Agreement at C-3.) However, the fact that L&L eventually sent Bratek the Warrants indicates that L&L had accepted Bratek's checks for the stock subscription and additional warrants, because under the terms of the Subscription Agreement, Bratek would not have been able to purchase additional warrants without having made this initial investment. Our finding that the Placement Memorandum and Subscription Agreement provide the controlling contractual agreement between the parties is preliminary only, subject to any defenses L&L or Bratek may raise at a later stage.

termination of this Offering." (Id. at C-2.) The Placement Memorandum and Subscription Agreement contain no provisions relating to arbitration. Rather, the Subscription Agreement contains provisions identifying Nevada as providing the governing law and the exclusive appropriate forum for litigating "[a]ny legal action, suit, or proceeding to be instituted by any party with respect to this Subscription Agreement." (Id.)

The Warrants, in contrast, were executed on March 21, 2005, post-dating Bratek's acceptance of L&L's offer to sell stock and warrants. The Warrants are not signed by Bratek and constitute an attempt to unilaterally alter the terms of the Placement Memorandum and Subscription Agreement. Bratek avers that he was initially advised that he "had been issued book warrants, which means that there was no formal document that would be provided to [him]" memorializing the warrants. (Bratek Cert. at ¶ 11.) Because Bratek did not sign the Warrants, and was under the impression that his contractual right to redeem warrants for stock existed prior to the date on which the Warrants were issued, equitable estoppel does not require enforcement of the arbitration clause simply because Bratek, in this action, also seeks a declaration that the right to redeem the warrants persists, regardless of the expiration date. See E.I. duPont Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,

S.A.S., 269 F.3d 187, 201-202 (3d Cir. 2001); see also Kirleis, 560 F.3d at 165 (applying Pennsylvania law).

The July 31, 2008 letter from Bratek's attorney manifests no assent to be bound by the arbitration clause of the Warrants, and in fact does not mention it at all. (7-31-08 Letter.) In any event, the record indicates that L&L rejected the terms of Bratek's proposed modification, by extending the eligibility date for the Warrants by six months as opposed to the two-year period sought by Bratek. (Id. & 8-25-08 Letter.) Whereas the issue of the warrants' expiration date is not addressed in the Placement Memorandum or Subscription Agreement, and thus no conflict exists between the earlier documents and the Warrants, the arbitration clause in the Warrants cannot be reconciled with the choice of law and forum selection clause identifying the State of Nevada as the proper forum for all litigation in the Subscription Agreement. The Court will not interpret the letter from Bratek's attorney as manifesting an intention to agree to the arbitration clause.

We cannot find on the record as presented that a valid agreement to arbitrate exists as between the parties. In the absence of such agreement, the relief sought by defendants in their motion to dismiss pursuant to Rule 12(b)(1), 12(b)(3), 12(b)(6), or Section 1406(a) is unavailable.

**III. Motion to Dismiss Pursuant to 28 U.S.C. § 1404**

Defendants contend that under the terms of the Warrants, "the proper venue for this matter is in arbitration . . . in Los Angeles, California and not in the state or federal courts in New Jersey." (Def. Br. at 7.) Although not addressed by the parties, the Court considers sua sponte whether transfer to the Central District of California, pursuant to Section 1404(a), is appropriate here.

Section 1404 provides for the transfer of an action to a more convenient forum. 28 U.S.C. § 1404(a). Pursuant to Section 1404, "a district court may transfer any civil action to any other district or division where it might have been brought." Id. A court may do so only if the transfer is "in the interest of justice" and "[f]or the convenience of parties." Id. Transfer is only appropriate when the proposed venue is one in which the action might have originally been brought. Id. Thus, the Court must make an initial determination that venue would lie in the proposed forum. Zapf v. Bamber, No. 04-3823, 2005 U.S. Dist. LEXIS 36379, at *3 (D.N.J. Aug. 26, 2005).

Subject matter jurisdiction in this case is predicated on the diversity of the parties. (Dkt. entry no. 1, Notice of Removal at ¶ 5 (stating that the Court has original jurisdiction under 28 U.S.C. § 1332).) Section 1391 provides the guidelines for determining where venue is appropriate. See 28 U.S.C. §

1391(a). Under Section 1391, where jurisdiction is based on diversity of the parties, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State, [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Id.

L&L is a Nevada corporation with its principal place of business in Seattle, Washington. (Notice of Removal at ¶ 9; Compl. at ¶ 2.) Dickson V. Lee is an individual residing in Seattle, Washington. (Notice of Removal at ¶ 10.) There is no contention that either defendant resides in the Central District of California, nor do the parties suggest that L&L is subject to personal jurisdiction in California such that it would be deemed to reside there for venue purpose. See 28 U.S.C. § 1391(c) ("[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). Furthermore, neither the Complaint nor the Notice of Removal contains any allegation that events or omissions giving rise to Bratek's claim occurred in the Central District of California.

Because Defendants have not shown that Bratek's action "might have been brought" in the Central District of California under Section 1391(a), transfer pursuant to Section 1404(a) is not available. Accordingly, the Court will not consider the private and public interest factors enunciated in Jumara v. State

Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995), that a court may take into account in deciding whether to exercise its discretion to transfer venue.

**CONCLUSION**

The Court, for the reasons stated supra, will deny Defendants' motion to dismiss or, in the alternative, transfer the action to the Central District of California. The Court will issue an appropriate order separately.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: May 12, 2010